| | |
|---|---|
| MILES LIVINGSTON, ANNA LIVINGSTON, and CHRISTOPHER GLAVACH,<br><br>Plaintiffs,<br><br>v.<br><br>LOUIS BERGER f/k/a LOUIS BERGER GROUP and VIRGIN ISLANDS WATER AND POWER AUTHORITY,<br><br>Defendants.<br>_____ | 1:19-cv-00012 |

TO: Lee J. Rohn, Esq.
     Eugenio W.A. Géigel-Simounet, Esq.
     Lorelei M. Farrington, Esq.
     Mark A. Kragel, Esq.
     Gerald D. Siegel, Esq.
     Warren B. Cole, Esq.
     Scott F. McChain, Esq.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the Court upon the Motion to Intervene of Louisiana Workers' Compensation Corporation ("LWCC") (ECF No. 28). None of the other parties have responded, and the time do so has now passed. The Court will, therefore, issue this order without necessity of response.

**I.    BACKGROUND**

Plaintiffs Miles Livingston and Christopher Glavach ("Employee-Plaintiffs") are employees of ACP, LLC, which was subcontracted by Defendant Louis Berger ("Berger") to perform storm repair and rehabilitation at the Virgin Islands Department of Health facility.

(ECF. No. 1-1 at ¶ 8). At the time, Plaintiff Miles Livingston was working as an electrician, and Plaintiff Glavach was an electrician's helper. *Id.* at ¶ 10. Employee-Plaintiffs were requested by Berger to perform an inspection of a damaged generator and a transfer switch to ensure a new one could be installed. *Id.* at ¶ 13. Defendant Virgin Islands Water and Power Authority's ("WAPA") 13,800-volt power line was connected to the hospital through the generator and switchbox by underground wiring, and unbeknownst to Employee-Plaintiffs, WAPA was circulating power on and off with no notice to persons working in the area. *Id.* at ¶¶ 14-15. The switch area had no signage as to dangers or voltage, no warning information, and there was no indicator of high voltage at the site other than the transformer. *Id.* at ¶¶ 21-22. Berger did not inspect the job site, including the switchbox and generator, prior to assigning the job to Plaintiffs. *Id.* at ¶ 26. As Plaintiff Miles Livingston was checking the voltage, there was a massive explosion, injuring Employee-Plaintiffs. *Id.* at ¶ 35.

The equipment Employee-Plaintiffs were assigned to work on was not properly labeled and was inadequate, as it had no proper test meters rated to the correct voltage. *Id.* at ¶¶ 36-37. Prior to the explosion, Employee-Plaintiffs were told by Defendants that the building had no power and that were no generators running, and Plaintiff Miles Livingston verified that no generators were running. *Id.* at ¶ 39. However, Berger failed to provide Employee-Plaintiffs with proper safety equipment, failed to provide required warnings, and failed to properly inform Employee-Plaintiffs of the dangers. *Id.* at ¶¶ 42-43. WAPA had line

crews in the area, and, upon information, was energizing and deenergizing lines without proper notice. *Id.* at ¶ 46.

Plaintiffs then filed suit in the Superior Court of the Virgin Islands, alleging that, as a result of Defendants' negligence, Employee-Plaintiffs suffered electrical shock injuries, physical and mental injuries, medical expenses, loss of income, loss of capacity to earn income, mental anguish, pain and suffering and loss of enjoyment of life. *Id.* at ¶ 51. They further alleged that Plaintiff Anna Livingston suffered loss of companionship and consortium. *Id.*

The case was removed to this Court on April 23, 2019. (ECF No. 1). On January 22, 2020, LWCC filed the immediate motion seeking to intervene in the lawsuit. (ECF No. 28). LWCC is the workers' compensation carrier for ACP and has provided workers' compensation benefits to the Employee-Plaintiffs. *Id.* at 1. Accordingly, it seeks intervention in this action so that it can assert its rights to indemnification. *Id.* at 1-2.

## II. APPLICABLE LEGAL PRINCIPLES

The party seeking to intervene, whether as a matter of right or permissively under Rule 24 of the Federal Rules of Civil Procedure, bears the burden of demonstrating that intervention is appropriate. *United States v. Alcan Aluminum, Inc.*, 25 F.3d 1174, 1181 n.9 (3d Cir. 1994) (noting that the burden of proving the elements under Rule 24(a) "falls on the applicant"); *see* 6 James W. Moore et al., 6-24 Moore's Federal Practice, § 24.03 (3d ed.) (stating that the applicant bears the burden of establishing its right to intervene and failure

to establish any one of the criteria under Rule 24(a) is sufficient grounds to deny the motion); *In re Budeprion XL Mktg. & Sales Litig.*, No. 09-MD-2107, 2012 WL 4322012, at *5 (E.D. Pa. Sept. 21, 2012) ("Whether to allow permissive intervention is left to the discretion of the trial court with the burden resting on the entity seeking to intervene.") (citing *Hoots v. Pennsylvania*, 672 F.2d 1133, 1135-36 (3d Cir. 1982)). Regardless of whether a non-party utilizes the mandatory or permissive mechanism for intervention, "[a] motion to intervene . . . must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c). Further, the court must accept as true the non-conclusory allegations made in support of a motion to intervene. *See Olympic Sports Data Servs. v. Maselli*, No. 07-117, 2008 WL 5377626, at *5 (E.D. Pa. Dec. 22, 2008) ("The court is to accept the movant's motions and pleadings as true to the extent they are nonconclusory and well-pleaded.") (collecting cases). Finally, "[a]n application to intervene, whether of right or by permission, must be timely under the terms of Rule 24." *In re Fine Paper Antitrust Litig.*, 695 F.2d 494, 500 (3d Cir. 1982).

Intervention as of right is governed by Rule 24(a)(2), which provides that a court must permit intervention where a movant, upon timely motion,

> claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2). Thus, in addition to timeliness, the following elements must be met in order to establish intervention as of right: (1) "the applicant has a sufficient interest in the

litigation;" (2) "the interest may be affected or impaired, as a practical matter by the disposition of the action;" and (3) "the interest is not adequately represented by an existing party in the litigation." *Gen. Star Indem. Co.*, 224 F.R.D. at 374-75 (quoting *Brody v. Spang*, 957 F.2d 1108, 1115 (3d Cir. 1992)); *accord Harris v. Pernsley*, 820 F.2d 592, 596 (3d Cir. 1987) (stating that each factor "must be met to intervene as of right").

Permissive intervention is governed by Rule 24(b), which provides that the Court may permit anyone to intervene, upon timely motion, who has "a conditional right to intervene by a federal statute" or "a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(A)-(B). Determining whether a motion for permissive intervention should be granted is within the discretion of the court. *See Pa. Prison Soc'y v. Cortes*, 622 F.3d 215, 232 (3d Cir. 2010); *Hoots*, 672 F.2d at 1135. In evaluating the applicability of permissive intervention, courts should consider whether the proposed intervenors "will add anything to the litigation," *Kitzmiller v. Dover Area Sch. Dist.*, 388 F. Supp. 2d 484, 486 (M.D. Pa. 2005), and whether the proposed intervenors' interests are already adequately represented in the litigation. *See Hoots*, 672 F.2d at 1136 (noting that "where . . . the interests of the applicant in every manner match those of an existing party and the party's representation is deemed adequate, the district court is well within its discretion in deciding that the applicant's contributions to the proceedings would be superfluous and that any resulting delay would be 'undue'"). Furthermore, "the court must

consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

### III. DISCUSSION

#### A. LWCC's Motion is Timely

"[T]imeliness is measured from the point at which the applicant knew or should have known, of the risk to its rights." *Gen. Star Indem. Co. v. Virgin Islands Port Auth.*, 224 F.R.D. 372, 375 (D.V.I. 2004); *see also Alcan Aluminum, Inc.*, 25 F.3d at 1182 (explaining that timeliness should be "measured from the point which an applicant knows, or should know, its rights are directly affected by the litigation" and "not . . . from the time the applicant learns of the litigation"); *Sierra Club v. Espy*, 18 F.3d 1202, 1206 (5th Cir. 1994) (to determine whether an applicant acted promptly, courts consider "the speed with which the would-be intervenor acted when it became aware that its interests would no longer be protected by the original parties"). However, an application to intervene is not made untimely by "the mere lapse of time." *Gen. Star Indem. Co.*, 224 F.R.D. at 375 (citing Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, 7C Federal Practice & Procedure Civil 2d § 1916 (1986) (internal quotation marks omitted)). Rather, timeliness is determined by looking at the totality of the circumstances. *Alcan Aluminum, Inc.*, 25 F.3d at 1181 (stating that "timeliness is not just a function of counting days") (citing *NAACP v. New York*, 413 U.S. 345, 366 (1973)).

In deciding whether a motion to intervene is timely, the following factors are considered: "(1) the stage of the proceedings reached when the movant seeks to intervene,

(2) the prejudice that the resulting delay might cause to other parties, and (3) the reason for the delay." *Gov't of the V.I. v. Lansdale*, Civ. Nos. 2001-157, 1998-243, 1992-79, 2010 WL 2991053, at *2 (D.V.I. July 26, 2010) (citing *Choike v. Slippery Rock Univ. of Pa.*, 297 F. App'x 138, 140 (3d Cir. 2008)).

Here, this case was removed to this Court on April 23, 2019, and the Scheduling Order was produced on October 21, 2019. While not submitted at the earliest stages of the proceedings, LWCC's motion comes at a time sufficient to avoid any prejudice, disruption, or delay. *See Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) (holding that a motion to intervene as of right was timely and would not cause prejudice, disruption, or delay in the proceedings when the applicants filed their motion less than three months after the complaint was filed and less than two weeks after the answer was filed).

### B. LWCC's Motion Satisfies Rule 24(a)(2)

#### 1. LWCC's Interest in the Litigation

Rule 24 does not detail what kind of interest a party must have to intervene as a matter of right, but the Supreme Court has held that "[w]hat is obviously meant . . . is a significantly protectable interest." *Donaldson v. United States*, 400 U.S. 517, 531 (1971); *see also Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 969 (3d Cir. 1998) (noting that no "precise and authoritative definition of the interest that satisfies Rule 24(a)(2)" exists) (internal quotation marks omitted). "Nonetheless, the polestar for evaluating a claim for intervention

is always whether the proposed intervenor's interest is direct or remote." *Kleissler*, 157 F.3d at 972. Accordingly, to establish a sufficient interest for intervention, "the applicant must demonstrate that there is a tangible threat to a legally cognizable interest to have the right to intervene." *Harris*, 820 F.2d at 601. "This interest is recognized as one belonging to or being owned by the proposed intervenor." *Mountain Top Condo. Ass'n*, 72 F.3d at 366. Furthermore, the proposed intervenor should have an interest that "is capable of definition, and will be directly affected in a substantially concrete fashion by the relief sought." *Kleissler*, 157 F.3d at 972. Finally, the Third Circuit has noted:

> In general, a mere economic interest in the outcome of the litigation is insufficient to support a motion to intervene. Thus, the mere fact that a lawsuit may impede a third party's ability to recover in a separate suit ordinarily does not give the third party a right to intervene.

*Mountain Top Condo. Ass'n*, 72 F.3d at 366 (internal citations omitted).

Here, LWCC has a significant interest in this action based on its subrogation lien for the workers' compensation benefits it paid to Employee-Plaintiffs after they suffered injuries. Under Louisiana law, a compensation insurer is entitled to receive complete indemnification or reimbursement with preference and priority for all sums it has paid or to be paid to or on behalf of Plaintiffs, out of any judgment or settlement in favor of Plaintiffs, including a dollar-for-dollar future credit. *See* La. Rev. Stat. § 23:1101, *et seq*. Virgin Islands law permits a similar reimbursement scheme. *See* V.I. Code Ann., tit. 24, §263. Therefore, the Court finds that LWCC has a sufficient interest related to the subject matter of this action to intervene.

### 2. Potential Impairment of Interest by Disposition of Action in LWCC's Absence

Once an applicant for intervention has established that he or she has a sufficient legal interest in the underlying dispute, the applicant must also show that the interest may be jeopardized in the applicant's absence. In making this determination, the court must assess "the practical consequences of the litigation, and may consider any significant legal effect on the applicant's interest." *Brody*, 957 F.2d at 1122 (internal quotation marks and citations omitted). It is not sufficient that the claim is incidentally affected; rather, there must be "a tangible threat" to the applicant's legal interest. *Id.* at 1123. This factor may be satisfied if, for example, a disposition of the present action in the applicant's absence will have a stare decisis, res judicata or collateral estoppel effect on any action which they bring separately, or if the applicant's rights may be affected by a proposed remedy. *See United States v. Smith*, 48 V.I. 544, 550 (D.V.I. 2006).

Here, the third factor for intervention is met, because, if it fails to intervene in the present action, LWCC may be barred from asserting its subrogation lien in a subsequent action. *See, e.g., Canal Ins. Co. v. Liberty Mut. Ins. Co.*, 570 S.E.2d 60, 62 (Ga. Ct. App. 2002) (finding that, without a carrier's intervention in a tort suit to protect its subrogation right, the carrier "could never carry its burden to prove that the employee had been fully compensated for his injuries and damages, thus barring any right of subrogation"). Many tort claims of this sort settle prior to trial. If LWCC is not allowed to intervene, it will have no legally enforceable stake in the settlement negotiations, nor will it have any say in how

settlement proceeds are allocated. Therefore, LWCC satisfies this element for intervention as of right.

### 3. Adequacy of Representation of LWCC's Interest By Existing Parties

To satisfy the third element, the applicant must demonstrate that the representation of its interest in the existing litigation by existing parties may be inadequate. *Kleissler*, 157 F.3d at 969. The applicant satisfies this burden by a showing that: (1) "the interest of the applicant so diverges from those of the representative party that the representative party cannot devote proper attention to the applicant's interest; (2) there is collusion between the existing parties; or (3) the representative party is not diligently prosecuting its suit." *Alcan Aluminum, Inc.*, 25 F.3d at 1185 n.15. Further, "[a]n intervenor need only show that representation may be inadequate, not that it is inadequate." *Kleissler*, 157 F.3d at 974 (internal quotation marks and citation omitted). Finally, "[t]here is a presumption that if one party is a government entity charged by law with representing the interests of the applicant for intervention, then this representation will be adequate." *Brody*, 957 F.2d at 1123 (citing *Del. Valley Citizens' Council for Clean Air v. Pennsylvania*, 674 F.2d 970, 973 (3d Cir. 1982)). "[T]he presumption notwithstanding, when an agency's views are necessarily colored by its view of the public welfare rather than the more parochial views of a proposed intervenor whose interest is personal to it, the burden [of establishing the inadequacy of the representation] is comparatively light." *Kleissler*, 157 F.3d at 972.

Here, there are no arguments that the existing parties to the action adequately represent LWCC's interests in this action. Accordingly, the Court finds that this factor is met and that intervention by LWCC should be allowed as of right.

### C. LWCC's Motion Also Satisfies Rule 24(b)

In an exercise of discretion, the Court finds that even if LWCC had not satisfied the elements for intervention as of right, it has met the requirements for permissive intervention under Rule 24(b). Not only is LWCC's motion timely, but there exists a common question of law as to whether Defendants are liable for Plaintiffs' injuries. For the reasons explained above, the Court also finds that intervention will not "unduly delay or prejudice the adjudication of the original parties' rights" under Rule 24(b)(3).

### IV. CONCLUSION

For the foregoing reasons, it is **ORDERED:**

1. LWCC's Motion to Intervene (ECF No. 28) is **GRANTED**.

2. LWCC shall file forthwith its Complaint, as required by Fed. R. Civ. P. 24.

ENTER:

Dated: February 18, 2020  /s/ George W. Cannon, Jr.
GEORGE W. CANNON, JR.
MAGISTRATE JUDGE